IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ESSIE L. HARDY,

    Plaintiff,

v.

WELLS FARGO BANK N.A.,

    Defendant.

CIVIL ACTION NO.
1:12-CV-851-SCJ-LTW

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

This case is presently before the Court on Defendant Wells Fargo Bank N.A.'s ("Wells Fargo") Motion for Summary Judgment and Motion for Leave to File Corrective Affidavit. (Docket Entries [74, 77]). For the reasons outlined below, Wells Fargo's Motion for Summary Judgment should be **GRANTED**. (Docket Entry [74]). Wells Fargo's Motion for Leave to File Corrective Affidavit is **GRANTED**. (Docket Entry [77]).

## WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

### I.    BACKGROUND

Plaintiff Essie Hardy ("Plaintiff") filed this lawsuit on February 6, 2012, in the Superior Court of Gwinnett County, for claims arising out of Wells Fargo's foreclosure on her residence. Wells Fargo removed the case to this Court on March 13, 2012. Wells Fargo and former Defendant Shapiro & Swertfeger, LLP moved to Dismiss Plaintiff's Complaint. The District Court adopted this Court's Report and Recommendation
AO 72A
(Rev.8/82)

recommending that Plaintiff's FDCPA claims against Shapiro & Swertfeger, LLP be dismissed. Although Plaintiff took advantage of an opportunity to amend her claims against Shapiro & Swertfeger, LLP, Plaintiff subsequently dismissed all of her claims against it. (Docket Entry [67]). The District Court also dismissed Plaintiff's claim against Wells Fargo seeking to set aside her foreclosure and enjoin her eviction. Thus, the only claims that remain to be addressed by Wells Fargo's summary judgment motion are Plaintiff's claims in Count I that Wells Fargo breached the Security Deed by failing to comply with HUD regulations prior to the acceleration of her debt or the foreclosure of her property, and Plaintiff's claims in Count VI that she is entitled to expenses of litigation and reasonable attorneys' fees pursuant to O.C.G.A. § 13-6-11.

Specifically, in Count I, Plaintiff contends that her Security Deed incorporates regulations issued by the Secretary of the Department of Housing and Urban Development ("HUD Regulations"). Plaintiff then argues that Well Fargo breached the Security Deed by failing to comply with HUD regulations requiring it to (1) deliver to the mortgagor a written notice of assignment, sale, or transfer of the servicing; (2) adapt its collection techniques to Plaintiff and her circumstances; (3) provide loan information to Plaintiff and arrange an individual loan consultation upon her request; (4) conduct a face to face interview with Plaintiff before three monthly mortgage installments were unpaid; (5) inform Plaintiff of other available assistance or the names and addresses of HUD officials to whom further communications could be addressed for assistance; (6) evaluate on a monthly basis all of the loss mitigation techniques provided by 24 C.F.R. § 203.50 or implement such loss mitigation techniques before four full monthly

installments due on the mortgage were unpaid; (7) ensure that servicing requirements within the HUD regulations were met; and (8) evaluate whether Plaintiff's default was due to circumstances beyond her control and grant her special forbearance relief. (Compl. ¶¶ 9, 19-37).

Wells Fargo contends that summary judgment should be granted as to (1) Plaintiff's breach of contract claims – that Wells Fargo foreclosed on her without first complying with HUD regulations incorporated into the Security Deed – because it substantially complied with each of the cited HUD regulations and Plaintiff did not suffer damages caused by any noncompliance on its part; and (2) Plaintiff's claims for expenses of litigation because there is no evidence of wrongdoing that would justify an award of attorneys' fees and costs.

## II. **PLAINTIFF'S MOTION TO STRIKE DEFENDANT WELLS FARGO'S AFFIDAVIT AND WELLS FARGO'S MOTION FOR LEAVE TO FILE CORRECTIVE AFFIDAVIT**

As a preliminary matter, Wells Fargo's Motion for Summary Judgment is largely supported by the Affidavit of Wells Fargo Bank, N.A. (Docket Entry [74-3]). Wells Fargo also attaches various documents to the Affidavit of Wells Fargo, including Plaintiff's Note and Security Deed, correspondence between Plaintiff and Wells Fargo, Assignments of Plaintiff's Security Deed, and the account history for Plaintiff's loan. (See Exs. to Wells Fargo's Aff.). Plaintiff seeks to strike the Affidavit of Wells Fargo and attached exhibits submitted with the Motion for Summary Judgment on the grounds that the Affidavit does not identify the affiant who is swearing under oath, is not signed,

3

AO 72A
(Rev.8/82)

and was not notarized. (Docket Entry [76]). In response, Wells Fargo contends that a Motion to Strike is not the proper procedural device for challenging its Affidavit. Additionally, Wells Fargo asserts that it has submitted the corrective Affidavit of Andrea Kruse, who is Wells Fargo's Vice President of Loan Documentation, and therefore, the issue is moot. (Docket Entry [77-3]).

Wells Fargo also separately filed a Motion for Leave to File Corrective Affidavit, and submitted the Affidavit of Andrea Kruse, which is signed and notarized and attaches each of the exhibits attached to the original Wells Fargo Affidavit. (Docket Entry [77]). This Court finds that Wells Fargo should be permitted to file the corrected Affidavit. As Wells Fargo points out, Plaintiff has been made aware of each document that Wells Fargo would be submitting in support of its Motion for Summary Judgment at the time the original, unexecuted Affidavit was submitted because the attachments to the original Affidavit are the same as those attached to the Kruse Affidavit. Additionally, the wording of both Affidavits is nearly identical. Moreover, although Plaintiff objected to facts within Wells Fargo's Statement of Undisputed Facts which were supported by the defective Affidavit, Plaintiff has independently admitted or denied each of Wells Fargo's factual allegations. Accordingly, in the interest of justice, Wells Fargo's Motion for Leave to File Corrective Affidavit is **GRANTED** (Docket Entry [77]); therefore, Plaintiff's Motion to Strike is **DEEMED MOOT**. (Docket Entry [76]).

Even if the Court did strike the Affidavit of Wells Fargo, however, it does not necessarily follow that the exhibits submitted with the Affidavit should also be stricken.

4

The exhibits may be considered in connection with the Motion for Summary Judgment if they can be reduced to admissible evidence at trial. Jones v. UPS Ground Freight, 683 F.3d 1283, 1293-94 (11th Cir. 2012); Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005); McMillian v. Johnson, 88 F.3d 1573, 1585 (11th Cir. 1996); Hill v. Bd. of Comm'rs of Mobile, No. 12-00510-KD-N, 2014 WL 1604004, at *1 n.3 (S.D. Ala. Apr. 22, 2014). Based on the Corrective Affidavit of Kruse, it is apparent that the documents attached to the original Affidavit could be properly authenticated and reduced to admissible form at trial as a business record.

## III. **FACTUAL BACKGROUND**[1]

On May 19, 1995, Plaintiff purchased real property using the proceeds of a $96,626 loan she obtained from Sterling Home Funding, Inc. ("Sterling"). (Aff. of

---

[1] All facts taken directly from Wells Fargo's Statement of Undisputed Material Facts (hereinafter "DSMF") remain undisputed. This Court must accept as admitted those facts in the moving party's statement that have not been specifically controverted with citation to the relevant portions of the record by the opposing party. LR 56.1B.2(2), (3), NDGa. Subjective perceptions, conclusory allegations, or allegations that are otherwise unsupported by record evidence do not create genuine issues of material fact in order to withstand summary judgment. See Chapman v. AI Transp., 229 F.3d 1012, 1051 n.34 (11th Cir. 2000) (en banc); Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989). Thus, this Court will not consider any fact (1) not supported by citation to evidence (including a page or paragraph number); or (2) stated as an issue or legal conclusion. Additionally, the parties have asserted evidentiary objections. This Court will assess the admissibility of any evidence presented through declarations or any other method and the objections thereto as part of its assessment of Wells Fargo's Motion for Summary Judgment. The Court will then rule on the evidence implicitly or explicitly in the consideration of the motion. See Friedlander v. Troutman, Sanders, Lockerman & Ashmore, 595 F. Supp. 1442, 1443 (N.D. Ga. 1984), rev'd on other grounds, 788 F.2d 1500 (11th Cir. 1986); Smith v. Se. Stages, Inc., 479 F. Supp. 593, 594-95 (N.D. Ga. 1977).

Andrea Kruse, hereinafter "Kruse Aff.," ¶ 4; DSMF ¶ 1). In connection with the loan transaction, Plaintiff executed an FHA adjustable rate note on May 19, 1995, in favor of Sterling. (Kruse Aff. ¶ 5, Ex. B). To secure repayment of the loan, Plaintiff also executed an FHA Security Deed in favor of Sterling, and therein granted Sterling and its successors and assigns the power of sale. (DSMF ¶ 4; Kruse Aff., Ex. C). The Security Deed incorporated certain HUD regulations in Section 9:

> 9. Grounds for Acceleration of Debt.
>
> (a) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
>
>> (i) Borrower defaults by failing to pay in full any monthly payment required by this Security instrument prior to or on the due date of the next monthly payment, or
>>
>> (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
>
> . . .
>
> (d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.
> . . .

(Kruse Aff., Ex. C, Docket Entry [77-4], p. 10). Paragraph 17 of the Security Deed gives the Lender the power to exercise the power of sale after requiring immediate payment in full of all sums due under Paragraph 9. (Kruse Aff., Ex. C, Docket Entry [77-4], p. 11).

6

The interests in Plaintiff's Security Deed was transferred multiple times. On May 19, 1995, the interests in Plaintiff's Security Deed were transferred to National Mortgage Investments Co., Inc.; on July 10, 1995, the interests were transferred to BancBoston Mortgage Corporation; and on September 21, 1999, the interests were transferred from the successor in interest of BancBoston Mortgage Corporation to Wells Fargo Bank, N.A. (Kruse Aff. ¶ 7, Exs. D, E, F). On November 15, 2006, Washington Mutual Bank sent Plaintiff a letter indicating that the servicing of her mortgage loan was being assigned to Wells Fargo, effective December 1, 2006. (Kruse Aff. ¶ 8, Ex. G). Plaintiff states that she never received written notice of the assignment, sale, or transfer of the servicing of her loan to Wells Fargo Bank. (Aff. of Essie Hardy, hereinafter "Hardy Aff.," ¶ 6).

Plaintiff's loan history with Wells Fargo evidences considerable efforts by Wells Fargo to work with Plaintiff in order to bring her loan current. Wells Fargo informed Plaintiff on multiple occasions between 2008 and 2011 that her mortgage payments were past due or that her loan was in default, and even threatened to accelerate her loan. (Kruse Aff. ¶¶ 9, 10, 12, 34, Exs. H, I, J, K, L, T; DSMF ¶¶ 18, 24). On most of those occasions, Wells Fargo offered some assistance to Plaintiff if she was experiencing financial difficulties, or informed Plaintiff of options so that she could avoid foreclosure, and even agreed to forbear foreclosing on Plaintiff's loan on multiple occasions if she agreed to the payment plan it offered. (Kruse Aff. ¶ 9, 10, 13, 20, 22, 24, Exs. H, I, J, M, O; DSMF ¶¶ 18, 37; Pl.'s Dep. 47, 79, Ex. 7)). On several occasions, Wells Fargo

7

provided Plaintiff with a 800-number for mortgage counseling from HUD. (Kruse Aff. ¶¶ 36, 40, Ex. R, p. 89, 129). Plaintiff took advantage of Wells Fargo's offer to modify her loan payments several times during the life of her loan, but often fell short of making the payments she promised to make pursuant to the modification. (Kruse Aff. ¶¶ 3, 17-18, 22, 24, Exs. M, Q, p. 38; Pl.'s Dep. 79).

Plaintiff testified that she never requested an individual loan consultation from Wells Fargo. (Pl.'s Dep. 139). Plaintiff states that although Wells Fargo suggested to her that she should take part in an individual loan consultation and said it would send someone to her to provide an individual consultation, it did not do so. (Pl.'s Dep. 139-40). Plaintiff was asked questions during her deposition to examine why she alleged in Paragraph 31 of her Complaint that Wells Fargo failed to adapt its collection techniques to her individual circumstances. (Pl.'s Dep. 145). When Plaintiff was asked whether she had any "individual differences" or circumstances, financial or otherwise, that made her feel that Wells Fargo should change its collection techniques, Plaintiff failed to identify any. (Pl.'s Dep. 145-46).

Plaintiff admits that Wells Fargo considered modifications to her loan four or five times during the life of the loan. (Pl.'s Dep. 180). Plaintiff also admits that she was provided four or five different payment plans. (Pl.'s Dep. 180). Plaintiff further admits that Wells Fargo never refused her request to be considered for loss mitigation. (Pl.'s Dep. 180). Plaintiff also admits that Wells Fargo solicited her completion of hardship affidavits explaining the nature of her hardship. (Pl.'s Dep. 180-81).

8

On November 16, 2011, Wells Fargo contacted Plaintiff via letter asking her to call Wells Fargo immediately in light of a scheduled foreclosure sale so that Wells Fargo could respond to her request for mortgage payment assistance. (Kruse Aff. ¶ 42, Ex. V). The letter also requested that Plaintiff gather information in order for Wells Fargo to determine what options were available to her. Specifically, Wells Fargo requested information regarding the following: (1) monthly gross income; (2) additional household income; (3) a list of all current monthly expenses including taxes and insurance for her home paid separately from her mortgage payment; and (4) the reason for her financial hardship. (Id.). Plaintiff admits that as of November 2011, she was not under any financial hardship which prevented her from making her mortgage payment. (Pl.'s Dep. 114-15). Although Plaintiff contacted Wells Fargo by telephone on November 18, 2011, to discuss repayment arrangements, Plaintiff and Wells Fargo were unable to reach an agreement. (Kruse Aff. ¶ 43, Ex. R, pp. 70-71, Ex. W). Wells Fargo instructed Plaintiff to call as soon as possible to discuss options that would help her. (Kruse Aff., Ex. W). On December 30, 2011, Plaintiff contacted Wells Fargo via telephone, and Wells Fargo advised Plaintiff that her financial information had been received, but the foreclosure sale was still scheduled as planned. (Kruse Aff. ¶ 44, Ex. R, pp. 50-52). On December 2, 2011, a foreclosure counsel provided Plaintiff with the total payoff amount for her loan as of that date. (Pl.'s Dep. 120, 167-68, Ex. 27).

Plaintiff contacted Wells Fargo on January 3, 2012, and advised Wells Fargo of her desire to keep the property. (Kruse Aff. ¶ 45). Wells Fargo advised Plaintiff,

9

however, that it could not guarantee that the foreclosure sale would be stopped. (Kruse Aff. ¶ 45, Ex. R, pp. 46, 48). A Deed Under Power was filed on January 27, 2012, evidencing the foreclosure sale as of January 5, 2012. (Kruse Aff. ¶ 46, Ex. X).

Plaintiff is not seeking any damages in this lawsuit relating to physical or mental injury, damages relating to credit reporting, or lost wages. (DSMF ¶¶ 78-80). Plaintiff does claim that she has been renting a storage facility for a year and a half for which she has paid between $89 and $142 per month. (Pl.'s Dep. 187-88).

## IV. <u>LEGAL ANALYSIS</u>

### A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of asserting the basis for her motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Apcoa, Inc. v. Fid. Nat'l Bank</u>, 906 F.2d 610, 611 (11th Cir. 1990). The movant is not required, however, to negate her opponent's claim; the movant may discharge her burden by merely "'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325. After the movant has carried her burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating specific facts showing that there is a genuine disputed issue for trial; the non-moving party may meet its burden through

10

affidavit and deposition testimony, answers to interrogatories, and the like. Id. at 324 (quoting Fed. R. Civ. P. 56(e)).

While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is material when it is identified as such by the controlling substantive law. Id. at 248. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." Anderson, 477 U.S. at 249-50. Thus, the Federal Rules mandate the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

AO 72A
(Rev.8/82)

**B. Plaintiff's Breach of Contract Claim Fails Because Plaintiff Did Not Raise a Genuine Issue of Material Fact as to Whether She Suffered Damages as a Result of Wells Fargo's Alleged Breach of HUD Regulations**

As discussed above, Plaintiff contends that Well Fargo breached the Security Deed because it did not comply with HUD regulations requiring it to (1) deliver to the mortgagor a written notice of assignment, sale, or transfer of the servicing; (2) adapt its collection techniques to her; (3) provide loan information to her and arrange an individual loan consultation upon request; (4) conduct a face to face interview with her before three monthly mortgage installments were unpaid; (5) inform her of other available assistance or the names and addresses of HUD officials to whom further communications could be addressed for assistance; (6) evaluate on a monthly basis all of the loss mitigation techniques provided by 24 C.F.R. § 203.50 or implement such loss mitigation techniques before four full monthly installments due on the mortgage were unpaid; (7) ensure that servicing requirements within the HUD regulations were met; and (8) evaluate whether her default was due to circumstances beyond her control and grant her special forbearance relief. (Compl. ¶¶ 9, 19-37). Wells Fargo contends that summary judgment should be granted as to Plaintiff's breach of contract claims that Wells Fargo foreclosed on her without first complying with HUD regulations incorporated into the Security Deed because Plaintiff was not damaged by any alleged noncompliance with HUD regulations incorporated by the contract.

The Eleventh Circuit has "recognized breach of contract claims based on a failure to comply with HUD regulations where the mortgage instrument expressly conditions

12

the mortgagee's right to accelerate or sell the property on compliance with HUD regulations." Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126, 1131 (11th Cir. 2014). In this case, Plaintiff's Security Deed provides in Section 9(a):

> 9. Grounds for Acceleration of Debt.
>
> . . .
>
> (d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.
> . . .

(Kruse Aff., Ex. C, Docket Entry [77-4], p. 10). Thus, because in the instant case the HUD regulations referenced in the Security Deed are conditions precedent to power to accelerate the debt and the power of sale, violation of such HUD regulations could likely form the basis for a breach of contract action under Georgia law. Bates, 768 F.3d at 1132.

Even assuming that Wells Fargo breached the aforementioned HUD regulations, however, Plaintiff's breach of contract claim still fails because Plaintiff cannot establish that she suffered resultant damages. In order to establish a breach of contract claim under Georgia law, Plaintiff must prove a (1) breach of the contract, (2) resultant damages (3) for the party who has the right to complain about the contract being broken. Inland Atlantic Old Nat'l Phase I, LLC v. 6425 Old Nat'l, LLC, 329 Ga. App. 671, —,766 S.E.2d 86, 92 (2014); Dewrell Sacks, LLP v. Chicago Title Ins. Co., 324 Ga. App. 219, 223 (2013). Thus, even if Plaintiff can establish that Wells Fargo failed to comply with

13

HUD regulations, and that the failure to comply breached a contractual duty owed by Wells Fargo, Plaintiff still must show damages caused by Wells Fargo's noncompliance with the regulations. Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126, 1131 (11th Cir. 2014).

In this case, Plaintiff has not raised a genuine issue of material fact as to whether she suffered damages caused by Wells Fargo's alleged breach of HUD regulations. A panel of the Eleventh Circuit recently explained that a violation of a condition precedent to the power to accelerate and power of sale cannot, in and of itself, create contractual liability. Bates, 768 F.3d at 1132. Instead, in order for the mortgager to succeed, "she must show that the premature or improper exercise of some power under the deed (acceleration or sale) resulted in damages that would not have occurred but for the breach." Bates, 768 F.3d at 1132-33; see also O'Connor v. Sand Canyon Corp., No. 6:14-CV-00024, 2015 WL 225423, at *5 (W.D. Va. Jan. 16, 2015) (dismissing breach of contract claim on the grounds that plaintiff must plausibly allege a connection between purported damages and the defendant's failure to give her notice required by HUD regulations); Rourk v. Bank of Am., Nat'l Ass'n, No. 4:12-CV-42 (CDL), 2013 WL 5595964, at *6 (M.D. Ga. Oct. 11, 2013) (dismissing claim concerning breach of HUD provisions incorporated into contract because in part, plaintiff failed to allege damages caused by alleged breach), aff'd on other grounds 587 F. App'x 597 (11th Cir. 2014); Miller v. Wells Fargo Bank, N.A., Inc., No. 1:12-CV-2708-RWS, 2013 WL 1189503, at *5 (N.D. Ga. Mar. 21, 2013) (same).

14

Plaintiff does not dispute that she must prove damages caused by Wells Fargo's alleged breach of HUD regulations as an element of her claim. (Pl.'s Br. 9; Def.'s Br. 4, 6). Instead, Plaintiff asserts that "she identified at her deposition that she incurred attorney's fees in the amount of $17,992.22." (Pl.'s Br. 19). Plaintiff does not cite to any portion of her deposition in support, and this Court is not required to cull through her deposition to locate facts in support of her assertion in this regard. Chavez v. Sec'y Fla. Dep't of Corrections, 647 F.3d 1057, 1061 (11th Cir. 2011); Johnson v. City of Fort Lauderdale, 126 F.3d 1372, 1373 (11th Cir.1997) ("[W]e are not obligated to cull the record ourselves in search of facts not included in the statements of fact."). Additionally, Plaintiff states that she disclosed her damages in mediation, but has not directed this Court to a record of what was disclosed during mediation. Finally, Plaintiff states in her affidavit:

> My damages are as follows but not limited to attorney's fees in the amount of $35,702.22, the substantial funds paid to Wells Fargo regarding loan modifications based on my reliance that Wells Fargo was acting in good faith, plus storage fees, and copy costs. Wells Fargo has the records regarding all the payments I made toward loan modifications.

(Pl.'s Aff. ¶ 21). Plaintiff's allegations in this regard are too conclusory to advance her cause. See, e.g., Daniel v. DeKalb Cnty. Sch. Dist., No. 14-11310, 2014 WL 7271347, at *2 (11th Cir. Dec. 23, 2014) (noting that a genuine issue of material fact is not created if it is not supported by the evidence or if the evidence is conclusory and therefore, not significantly probative); Pepper v. Coates, 887 F.2d 1493, 1498 (11th Cir. 1989) (holding that the non-moving party's response to the motion for summary judgment must

15

consist of more than conclusory allegations, and a mere "scintilla" of evidence will not suffice). First, Plaintiff provides no facts tending to show that the alleged breach of the HUD regulations caused her to incur storage fees or copy costs. Plaintiff does not direct the Court to any specific information tending to show that she would not have incurred such fees if Wells Fargo had not allegedly breached the HUD regulations. Similarly, Plaintiff does not explain her theory as to how Wells Fargo's alleged breach of the HUD regulations caused her to pay Wells Fargo substantial sums pursuant to the modifications of her loan or how Wells Fargo was acting in bad faith when agreeing to modify her loan. Additionally, Plaintiff does not present any facts tending to show that the payments she made during the loan modification periods were higher than the payments she would have owed if she had been paying in accordance with the terms of her original Note and Security Deed. The law is well settled in this circuit that a legal claim or argument that has not been briefed is deemed abandoned and that mentioning an issue without providing specific argument in support is not sufficient. Dawkins v. Glover, 308 F. App'x 394, 395 (11th Cir. 2009). The mere mention of an argument without any supporting substantive analysis is not sufficient. Seay v. United States, 166 F. App'x 422 (11th Cir. 2006) (Petitioner's mere statement that district court improperly dismissed his complaint on res judicata grounds without any substantive argument in support amounted to abandonment of his claims even though he argued the merits of his underlying claims). Moreover, issues cryptically raised in passing and not clearly raised are deemed abandoned. APA Excelsior III L.P. v. Premiere Techs., Inc., 476 F.3d 1261,

16

1270 (11th Cir. 2007).

Second, Plaintiff's conclusory statements omit to indicate the reason why she accumulated $35,702.22 in attorneys' fees as well as any facts tending to show that she incurred the attorneys' fees as a result of Wells Fargo's alleged breach of the HUD regulations. Even if Plaintiff had produced such evidence, Plaintiff's breach of contract claim as well as her claim for litigation expenses and attorneys' fees would still fail. Plaintiff may not establish the damages for her breach of contract claim by merely showing that she incurred attorneys fees' in the instant lawsuit. Attorneys' fees and expenses of litigation are generally not part of contract damages. O.C.G.A. § 13-6-11. Plaintiff may not recover attorneys' fees and expenses of litigation unless the Plaintiff presents evidence of damages in addition to attorneys' fees. Benchmark Builders, Inc. v. Shultz, 289 Ga. 329, 330 (2011); Amstead v. McFarland, 287 Ga. App. 135, 141 (2007) ("Similarly, a claim for attorney fees under O.C.G.A. § 13-6-11 will not lie when general damages are not awarded."); Duffy v. Landings Ass'n, Inc., 254 Ga. App. 506, 509 (2002). Because Plaintiff has failed to raise a genuine issue of disputed material fact as to whether she was damaged by Wells Fargo's alleged breach of HUD provisions incorporated into her Security Deed, summary judgment should be **GRANTED** as to Plaintiff's breach of contract claim in Count I. Additionally, because Plaintiff did not establish that she suffered any damages as a result of the alleged breach of the HUD regulations incorporated within the Security Deed, summary judgment should be **GRANTED** as to Plaintiff's derivative claim for attorneys' fees and expenses of

litigation pursuant to O.C.G.A. § 13-6-11 in Count VI.

## **CONCLUSION**

For the reasons stated above, this Court **RECOMMENDS** that Wells Fargo's Motion for Summary Judgment should be **GRANTED**. (Docket Entry [74]). Wells Fargo's Motion for Leave to File Corrective Affidavit is **GRANTED**. (Docket Entry [77]). As this is a final Report and Recommendation and there are no other matters pending before this Court, the Clerk is directed to terminate the reference to the undersigned.

**SO REPORTED AND RECOMMENDED** this 23rd day of January, 2015.

/s/LINDA T. WALKER
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)